[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Ruling On Motion To Dismiss
The issue presented is whether, on the facts of this case, the plaintiffs are required to have obtained a "release letter" from the Connecticut Commission on Human Rights and Opportunities ("CHRO") prior to bringing a cause of action in Superior Court. As there is no allegation of such a release in the complaint, the defendants have moved to dismiss those counts of the complaint which allege violations of § 46a-60 of the General Statutes. The plaintiffs claim that in the circumstances of this case it was impossible to obtain a release letter pursuant to §§46a-100 and 46a-101 of the General Statutes, so the prerequisite ought to be excused.
The plaintiffs' complaint alleges the following facts. The plaintiffs, Silvia and Cornel Calinescu, are husband and wife, and they are both originally from Romania. The defendant, Pegasus Management, Inc (Pegasus), is a corporation doing business in the state of Connecticut, and is the parent company of the defendant, Olympus Healthcare Group, Inc. (Olympus). Olympus is a Massachusetts corporation which does substantial business in Connecticut.
On June 5, 1995, the plaintiffs began part-time, temporary employment with the Silver Springs Nursing Center (Silver Springs), as certified nursing assistants. Sometime in late 1997, or early 1998, Silver Springs merged or was purchased "by Pegasus and/or Olympus." (Pls' Cmplt ¶ 5.)
In September of 1995, the plaintiffs were made permanent employees of Silver Springs. Shortly thereafter, however, the plaintiffs allege that they began to be harassed by their coworkers. Particularly, both plaintiffs claim that they were harassed on the basis of their national origin, and Silvia Calinescu claims that she was harassed on the basis of her sex. The plaintiffs allege that they reported this harassment to their CT Page 2011 supervisors and union delegates, but no action was taken. In particular, the plaintiffs allege that "the defendants failed to act, investigate, warn, reprimand, and/or discipline the responsible parties with respect to the harassment." (Pls' Cmplt ¶ 9.)
Consequently, on September 11, 1997, Silvia Calinescu filed a complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO) alleging claims of discrimination on the basis of her national origin and sex. The complaint, however was rejected by the CHRO during its merit assessment review process. The plaintiff then filed a timely request for reconsideration. On February 23, 1998, however, the CHRO rejected the plaintiffs reconsideration request.
Thereafter, on April 28, 1998, the plaintiffs commenced this action against the defendants. The plaintiffs' nine count complaint alleges the following causes of action, respectively: (1) a violation of General Statutes § 31-49, or unsafe working environment; (2) breach of contract; (3) breach of the implied covenant of good faith: (4) a violation of Title Vll (42 U.S.C § 2000 et eq.) and General Statutes §§ 46a-60 and46a-58, discrimination on the basis of sex (Silvia Calinescu only); (5) a violation of Title Vll (42 U.S.C. § 2000 et seq.) and General Statutes §§ 46a-58 and 46a-60. discrimination on the basis of national origin (Silvia Calinescu (only); (6) negligent infliction of emotional distress; (7) intentional infliction of emotional distress: (8) negligent supervision: and (9) wrongful discharge in violation of public policy.
Presently, the court is concerned only with the defendant's motion to dismiss the fourth and fifth counts of the plaintiff Silvia Calinescu's ("the plaintiff") complaint alleging claims for discrimination based upon her national origin and sex.
The defendants argue in support of their motion to dismiss that since the plaintiff has not pleaded that she received a release of jurisdiction from the CHRO to bring her private cause of action for discrimination, the court lacks subject matter jurisdiction over the fourth and fifth counts of the complaint. Specifically, the defendants argue that a release of jurisdiction from the CHRO to commence a civil action for discrimination, pursuant to General Statutes §§ 46a-100 and 46a-101, is a condition precedent to the commencement of such an action in CT Page 2012 superior court. Therefore, the plaintiff's failure to plead that she received such a release from the CHRO deprives this court of subject matter jurisdiction, and the defendants' motion to dismiss must be granted.
Additionally, the defendants' argue that the plaintiff has not received permission from the Equal Employment Opportunity Commission (EEOC) to bring her Title VII discrimination claims in, counts four and five, and as such, the court lacks subject matter jurisdiction over both claims.
The plaintiff does not contend that she has alleged in her complaint that she received a release of jurisdiction from the CHRO. In fact, the plaintiff admits that she has never received a release of jurisdiction from the CHRO.[1] Nonetheless, the plaintiff argues that this court has subject matter jurisdiction over her discrimination claims. The plaintiff claims that because she could not, prior to the commencement of this action, obtain a release of jurisdiction pursuant to General Statutes §§ 46a-100
and 46a-101, the two statutes are inapplicable to this action. Additionally, the plaintiff argues that pursuant to 42 U.S.C. § 2000 e-5(c), the CHRO, and not the EEOC, is afforded the initial opportunity to investigate complaints of discrimination. Thus, in the initial processing of discrimination complaints, the CHRO acts on its own behalf, as well as the EEOC's, in determining the merits of a discrimination claim. Therefore, the plaintiffs argue, a dismissal of a claim by the CHRO acts as a dismissal of a claim by the EEOC, and the plaintiff is not required to secure permission from the EEOC to commence this action in superior court with respect to her Title VII claims.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991), "Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Konover v. Town of West Hartford, 242 Conn. 727,740, 699 A.2d 158 (1997). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Community Collaboration ofCT Page 2013Bridgeport, Inc. v. Ganim, 241 Conn. 546, 552, 698 A.2d 245
(1997).
I. Connecticut Fair Employment Practices Act
General Statutes § 46a-100 provides in pertinent part: "Discriminatory employment practices. Causes of action upon release from commission. Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82, alleging a violation of section 46a-60 and who has obtained a release from the commission in accordance with section 46a-101, may also bring an action in the superior court. . . ." In the present action, there is no dispute that the plaintiff timely filed her complaint with the CHRO, or that she alleged violations of General Statutes §46a-60 in her CHRO complaint. It is likewise undisputed that she did not receive a release.
Consequently, the court is concerned with the plaintiffs failure to obtain the requisite CHRO release of jurisdiction in accordance with General Statutes § 46a-101. General Statutes § 46a-101 (b) provides in pertinent part: "The complainant, or his attorney, may request a release from the commissioner if his complaint with the commission is still pending after the expiration of two hundred ten days from the date of its filing."
Here, the plaintiff filed her complaint with the CHRO on September 11, 1997. Although it is unclear precisely when the CHRO actually dismissed the plaintiff's complaint because it "violated [m]erit [a]ssessment," it appears that the dismissal occurred sometime in December, 1997.[2] Thereafter, the plaintiff filed a timely request for reconsideration of the decision to dismiss the complaint. The CHRO, however, denied the plaintiffs request for reconsideration on February 23, 1998. (Pls' Cmplt ¶ 25.)[3] Thereafter, on April 28, 1998, the plaintiffs commenced this action against the defendants.
It is well established in Connecticut that a party may not institute an action in the superior court without first exhausting available administrative remedies. Hyatt v. Milford,26 Conn. App. 194, 197. 600 A.2d 5, cert. dismissed,224 Conn. 441, 619 A.2d 450 (1993). "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Emphasis added; CT Page 2014 internal quotation marks omitted.) Pet v. Dept. of HealthServices, 207 Conn. 346, 350-01, 542 A.2d 672 (1988).
There are exceptions, however, to this general rule. Sullivanv. Board of Police Commissioners, 196 Conn. 208, 216-17,491 A.2d 1096 (1985); see Conto v. Zoning Commission, 186 Conn. 106, 115,439 A.2d 441 (1982) (resort to administrative remedy not required when remedy plainly inadequate); Mathews v. Diaz, 426 U.S. 67,76-77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (administrative remedy not required when issue presented beyond competency of the agency). Here, neither party contends that the plaintiffs discrimination claims tall into any recognized exception to the exhaustion doctrine.
Specifically, the plaintiff does not claim that her administrative remedy was inadequate. See Conto v. ZoningCommission, supra, 186 Conn. 115. Nor does she claim that the CHRO lacked expertise over her claims; Mathews v. Diaz, supra, 426 U.S. 76-77; or that the exhaustion of her administrative remedies would have been futile. Hunt v. Prior, 236 Conn. 421,431-32, 673 A.2d 514 (1996). Instead, the sole issue before the court is whether a plaintiff who files a complaint with the CHRO in a timely fashion, but whose complaint is dismissed by the CHRO before the plaintiff may be statutorily eligible for a release and therefore has not obtained a release, is able to commence an original discrimination action in superior court.
"The purpose of the exhaustion requirement is to encouragethe use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it." (Emphasis added; internal quotation marks omitted.) Hunt v.Prior, supra, 236 Conn. 431-32, 673 A.2d 514 (1996) "The exhaustion doctrine reflects the legislative intent that . . . issues be handled in the first instance by . . . administrative officials in order to provide aggrieved persons with full andadequate administrative relief; and to give the reviewing court the benefit of the [administrative official's] judgment." (Emphasis added; internal quotation marks omitted.) Simko v.Ervin, 234 Conn. 498, 504, 661 A.2d 1018 (1995).
Although this is not an action which the plaintiff has sidestepped the administrative process by failing to first pursue her administrative remedies with the CHRO before commencing a CT Page 2015 civil action in superior court; see, e.g., Sullivan v. Board ofPolice Commissioners, supra, 196 Conn. 217-18 (plaintiffs failure to even pursue administrative remedies deprived court of subject matter jurisdiction); Dinegar v. University of New Haven,
Superior Court, judicial district of New Haven at New Haven, Docket No. 378256 (October 16, 1997, Silbert, J.) (plaintiff did not file claim with CHRO before commencing civil action); Matejekv. New England Tech. Ins. of Conn. Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 404320 (April 7, 1998, Blue, J.) (plaintiff never filed complaint with CHRO);Amador v. City of Hartford, United States District Court, Docket No. 1736 (Dis. of Conn., February 10, 1998) ("[p]laintiffs do not dispute they failed to file a complaint with the CHRO"); it is nonetheless clear that a release, for whatever set of circumstances, has not been obtained.
In support of their arguments, the parties have identified two cases which appear to be somewhat on point and which reach apparently irreconcilable results. The defendants direct the court's attention to the case of Catalano v. Bedford Assoc.,Inc., United States District Court, Docket No. 1414 (Dis. of Conn., April 28, 1998). In Catalano v. Bedford Assoc., Inc., supra. the court held that a plaintiff who had commenced a civil action in district court, after his complaint was dismissed by the CHRO, had not met the plain requirements of General Statutes §§ 46a-100 and 46a-101 (b) because he failed to obtain a CHRO release of jurisdiction.[4] Thus, the court granted the defendant's motion to dismiss the plaintiffs discrimination claims for lack of subject matter jurisdiction.
Conversely, the plaintiff cites the decision of Denning v.Admarket International, supra, Superior Court, Docket No. 343964, in support of her argument. In Denning v. Admarket International,
supra, the court held that a plaintiff who had not obtained a release of jurisdiction from the CHRO, although the CHRO had dismissed her discrimination claims, had sufficiently exhausted her administrative remedies under the Connecticut Fair Employment Practices Act (CFEPA). Therefore, the court denied the defendant's motion to dismiss the plaintiffs discrimination claims.
Although neither decision is binding on this court, the court finds the analysis and reasoning of Catalano the more persuasive In Catalano, the plaintiff, alleging a violation of CFEPA (specifically § 46a-60), asserted that a release letter was CT Page 2016 not required because his complaint to the CHRO was dismissed. He claimed that he had exhausted his administrative remedies, then, and was entitled to bring the original action in court. The court, Dorsey, U.S.D.J., succinctly stated that under Connecticut law, courts have subject matter jurisdiction over a CFEPA claim only if the plaintiff timely files a discrimination complaint with the CHRO and the plaintiff obtains a release from the commission to tile suit (citing Luth v. Wal-Mart Stores, Inc.,
1995 Conn Super. LEXIS 2403, 1995 WL 506076) (Aug. 18, 1995). Judge Dorsey went on to hold, quite simply, that "[s]ubject matter jurisdiction does not exist where a plaintiff has not obtained a release from the CHRO and has therefore failed to comply with the clear and unambiguous statutory prerequisite embodied in [§ 46a-101]'" (citing Mehta v. Wiremold Co.,
1995 Conn. Super. LEXIS 834, 1995 WL 128222) (March 15, 1995).
The jurisdictional requirements set forth in §§ 46a-100
and 46a-101 are clear and unambiguous, and, in a closely related context, our Supreme Court has held that similar requirements are mandatory. Angelsea Productions, Inc. v. CHRO, 236 Conn. 681
(1996) see also Kinkade v. Wiseman, 1997 Conn. Super LEXIS 3532 (December 30, 1997). As noted by Judge Blue in Matejak v. NewEngland Technical Institute of Connecticut, Inc., 1998 Conn. Super. LEXIS 998 (1998), "[n]o statute allows a complainant to file an original action in the Superior Court in the absence of such a release. The statutory scheme . . . makes it clear that the legislature neither contemplated nor authorized such a procedure."
Although it may or may not be true that in the circumstances of this case the plaintiff was unable to obtain a release and thus unable to file an original action in this court, there is no overwhelming injustice. The plaintiff presumably could have filed an appeal from the order dismissing the complaint. See, e.g.,Haylett v. CHRO, 207 Conn. 547 (1988). It would appear that a primary purpose of the release procedure is to allow plaintiffs a theoretically speedy redress if, because of administrative backlogs, the commission is not able to address complaints in an expeditious manner: if, therefore, a complaint has been languishing for the requisite time, the complaint, with the approval of the commission, may be "released" for judicial action. If the commission does act in an expeditious manner, there would seem to be no compelling reason why the matter should not be treated as any other administrative appeal. It indeed runs somewhat contrary to traditional notions of administrative law to CT Page 2017 allow a litigant to pursue the administrative forum, lose, and then start all over again in Superior Court. The motion to dismiss is granted as to the CFEPA claims.
II. Title VII
The defendants have also moved to dismiss the plaintiffs Title VII claims in counts four and five on the ground that the plaintiff has failed to obtain a release, or "right-to-sue" letter, from the EEOC. Therefore, the defendants argue that the plaintiffs failure to plead that she satisfied this statutorily prescribed condition precedent to bringing a Title VII claim, deprives the court of subject matter jurisdiction.
The plaintiff counters that pursuant to 42 U.S.C. § 2000e-5
(c), the CHRO, not the EEOC, is afforded the initial opportunity to investigate complaints of discrimination. Consequently, since the CHRO acts on its own behalf, as well as the EEOC's in processing discrimination complaints, a dismissal of a claim by the CHRO acts as a dismissal of a claim by the EEOC. Therefore, the plaintiff was required to secure permission from the EEOC to commence this action in superior court with respect to her Title VII claims. Criales v. American Airlines,105 F.3d 93 (2d. Cir. 1997); Butler v. Knights of Columbus,
3 Conn. Ops. 1318 (D. Conn. 1997). I found no support for the plaintiffs proposition that simply because the CHRO dismissed the plaintiffs discrimination claims, she is not required to satisfy the Title VII requirements for bringing a federal discrimination claim. To the contrary, I found ample support for the proposition that in order for a claimant to bring a Title VII in action in civil court, the claimant must meet two requirements: (1) the claimant must timely file her claim with the EEOC, and (2) she must timely institute her action after receipt of a right-to-sue notice. See 42 U.S.C. § 2000e-5 (f)(1); Alexander v.Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011. 39 L.Ed.2d 147
(1974) (prerequisite to suit under Title Vll includes EEOC right to sue letter); McDonnell Douglas Corp. v. Green, 411 U.S. 792,798, 93 S.Ct. 1822, 36 L.Ed.2d 668 (1973) (prerequisite to suit under Title VII includes EEOC right to sue letter); Austin v.Ford Models, Inc., ___ F.3d ___ (2nd Cir. 1998) (claimant must file with EEOC and obtain right to sue letter); Criales v. AmericanAirlines, Inc., 105 F.3d 93, 95 (2nd Cir. 1997) ("the prerequisites for a suit under Title Vll include a timely filed . . . charge [to the EEOC] and timely institution of the suit after receipt of a right-to-sue notice"); Holt v.CT Page 2018KMI-Continental, Inc., 95 F.3d 123, 127 (2nd Cir. 1996) ("[o]nce a claimant has received a right to sue letter from the EEOC, suit must be filed within ninety days").
Accordingly, the defendants' motion to dismiss the plaintiffs Title Vll claims in counts four and five of the complaint is granted, as the plaintiff has not received a "right-to-sue" letter from the EEOC, as required by 42 U.S.C. § 2000e-5 (f) (1). Counts four and five are dismissed.
Beach, J.